IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MARY DUFFY, | ) Civ No. 09-00337 SPK-BMK |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| JOHN M. McHUGH, SECRETARY OF | ) |
| THE ARMY. | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS AND FOR
SUMMARY JUDGMENT

Defendant John M. McHugh, Secretary of the Army,[1] ("the Army" or "the

government") moves to dismiss and for summary judgment on the various claims

in Plaintiff Mary Duffy's complaint.  The matter was submitted without an oral

hearing under Local Rule 7.2(d), based upon written argument and the evidence in

the record.  Andre' Wooten represents Plaintiff and Assistant United States

Attorney Thomas Helper represents the government.  For the reasons set forth, the

government's motion is GRANTED on all counts.  Judgment shall issue in favor of

_____

[1] The current Secretary of the Army, John M. McHugh, is substituted as
Defendant in place of Pete Geren, the former Secretary of the Army.  *See* Fed. R.
Civ. P. 25(d).

the government.

## I.  BACKGROUND

Although some of the non-material details are disputed, the evidence in the record[2] indicates in relevant part as follows:[3]

Plaintiff Mary Duffy was 71 years-old when she retired in early-2005 as a grade GS-9 civilian administrative services specialist for the United States Army. [*E.g.*, Defendant's Concise Statement of Facts, Exh. 11].  She claims in this suit that her retirement was forced or was otherwise the result of unlawful disability and age discrimination.

Plaintiff had been assigned to the U.S. Army's Military Police Brigade

---

[2] In lieu of deposition transcripts, the parties have submitted transcripts of testimony from administrative Equal Employment Opportunity Commission ("EEOC") hearings and fact finding proceedings.  These transcripts are admissible as evidence in this civil action.  *See, e.g.*, *Clark v. Principi*, 200 F. Supp. 2d 1109, 1111 n.1 (E.D. Mo. 2002) ("The record before the [EEOC Administrative Law Judge], including the sworn testimony of the plaintiff and other witnesses is competent and admissible evidence before this Court.  Plaintiff has not objected to these exhibits, in fact, she herself cites to them."); *McKay v. Principi*, 2004 WL 2480455, *1 n.10 (S.D.N.Y. Nov. 4, 2004).

[3] Disputes of fact in admissible evidence are construed in Plaintiff's favor as is required at a summary judgment stage because Plaintiff is the non-moving party. *See, e.g.*, *Tennison v. City and County of S.F.*, 570 F.3d 1078, 1087 (9th Cir. 2009) ("We construe all facts in the light most favorable to . . . the non-moving party, in deciding whether a dispute of fact is material and thereby precludes summary judgment.").

headquarters at Fort Shafter, Hawaii.  The decision was made in approximately July 2004 to move the unit from Fort Shafter to Schofield Barracks (about 20 miles away) beginning in the Fall of 2004.  [*E.g.*, Defendant's Exh. 3, Tr. at 73; Defendant's Exh. 4, at 95-97].  Although there might be some question as to the administrative procedure for requesting the move from Fort Shafter to Schofield, [*see* Plaintiff's Exh. 22, Tr. of Purifoy at 6], it is undisputed that the decision to move had been made in the Summer of 2004, when employees were notified. [Defendant's Exhs. 3 at 73, Exh. 4 at 95-97].

Duffy wanted to remain at Fort Shafter.  On July 28, 2004, she wrote a letter to her third-level supervisor Colonel Kevin LaMar (then-Commander of the U.S. Army Military Police Brigade, Hawaii) requesting that she be allowed to remain at Bldg. T-118 in Fort Shafter when the unit moved to Schofield.  She wrote "Factor in this request is my disability.  The daily commute from my downtown Honolulu residence to the Schofield Barracks office would be harmful to my health." [Defendant's Exh. 6].

On August 3, 2004, Col. LaMar wrote back indicating he "will take [the request] into consideration but indicated "you do not further expound on how or why this commute would be harmful.  Further clarification would be beneficial." [Defendant's Exh. 7].

3

On October 4, 2004, Plaintiff wrote back to Col. LaMar, writing "[as] requested, medical clarification and further explanation of why this commute would be harmful to my health are attached."  She included three notes from physicians.  One note from Dr. Uhr read in pertinent part as follows:

> Ms. Mary Duffy is currently under my care for her knee condition.
> She has arthritis in both knees . . . .
>
> It is for this reason that I recommend against her workplace being
> relocated to a site that would involve significant extra driving.  Her
> symptoms are likely to be aggravated by the prolonged flexion of the
> knee as well as the constant use of the right leg in driving her car.

[Defendant's Exh. 8].

> Another note from Dr. McCanless read:
>
> Dear Ms. Duffy,
>
> This letter, per your request, is to confirm that you have a history of
> panic disorder, for which you continue to receive treatment.  One of
> your ways to cope with your anxiety attacks has been to avoid
> freeway driving, which your present job location allows you to do.
> This would not be possible at a Schofield Barracks location, and the
> additional miles would exacerbate your condition.

[*Id.*]  And a third note from Dr. Hong read:

> I am writing at the request of Ms. Duffy.  She is a 71 year old female
> patient who has been under my care for at least 9 years.  She has
> severe compartment arthritis of the right knee and moderate femoral
> arthritis bilaterally.  She does have difficulty walking extended
> distances, and frequently needs to lean on things as she , [sic]  She
> informs me that she is possibly being transferred from Fort Shafter to
> Schofield Barracks.  She indicates that the prolonged drive may

4

> exacerbate her knee pains, and this certainly is a possibility.  If it is
> possible, please consider accomodating [sic] her request to remain at
> Fort Shafter.

[*Id.*]

Shortly thereafter, her immediate supervisor, Capt. Daxton Stilwell, wrote a letter to Plaintiff requesting further information.  He asked for releases from her physicians.  He also provided a three-page questionnaire for each physician, asking among other things, whether any impairments "prevent or severely restrict performance of any major life activity."  The questionnaire listed activities such as walking, seeing, hearing, breathing, thinking etc.  [Defendant's Exh. 9].  It asked for a response by December 16, 2004.  Plaintiff did not respond in writing.

On December 8, 2004, Capt. Stilwell wrote a letter to Plaintiff indicating that the Army had considered her request to remain in building T-118 at Fort Shafter, but was denying the request essentially because she was "mission essential" and needed to be with the rest of her unit at Bldg. 3004 at Schofield Barracks.  Capt. Stilwell continued:

> I have taken into consideration your medical concerns and will allow
> you to remain at Bldg T-118 Fort Shafter until close of business on 17
> Dec. 2004.  However, on 20 Dec. 2004, I expect you to report to work
> at your normally scheduled time at our new Brigade Headquarters at
> Bldg 3004, Schofield Barracks.  If you believe you will have
> difficulties with commuting to our new Headquarters, I encourage you
> to use your time at Fort Shafter to find and/or coordinate alternate
> means of transportation to Schofield Barracks.   I am also willing to

work with you to arrange a new work schedule if you believe you
cannot report for your current scheduled tour of duty.  If you need to
change your scheduled tour of duty this must be coordinated with me
by close of business on 17 Dec 2004.

[Defendant's Exh. 10].

At some point, her focus changed from the longer commute to attempting to

be assigned to the first floor of Bldg. 3004 at Schofield Barracks.  She apparently

had been told that her new desk would be on the second floor.  She had been

working for many years on the second floor of Bldg. T-118 at Fort Shafter, but she

contends that the new location – which she had never visited but claims she was

aware of from pictures and verbally from others – would have been a hardship on

her knees.  [*E.g.*, Defendant's Exh. 2, at 57-61; Plaintiff's Declaration of July 2,

2010, at 13].  Although the number of stairs at Bldg. 3004 at Schofield is *less* than

the number of stairs she had been climbing at T-118 at Fort Shafter, she contends

that the Fort Shafter building stairs had carpet and a different configuration.  She

also points out that there was a ramp built (for her) at the Fort Shafter location, but

there was no such ramp at the Schofield location.  [Plaintiff's Exhs. 6-8].

As will be discussed later, it could be that the issue of her exact desk

location was still open.  As part of an "interactive process," an EEO official and

Capt. Stilwell had indicated they would "see what they could do" about a location

on the first floor or otherwise accommodating her medical concerns.  [*E.g.*,

Defendant's Exh. 1, Tr. at 61].  Meanwhile, Plaintiff had arranged for a van pool that would take her to Schofield Barracks, alleviating concerns about driving or having to park away from Bldg. 3004 at Schofield.  [Defendant's Exh. 2, Tr. at 56].

Plaintiff then emailed and wrote a letter of December 14, 2004 directly to Lt Gen. John  Brown, III, then-Commander of the U.S. Army Pacific Command, indicating among other things that "My disability. . . was not considered in this move."  [Plaintiff's Exh. 14].  Col. LaMar apparently became upset that Plaintiff had gone around the military chain of command.  [*E.g.*, Plaintiff's Exh. 9, Tr. at 75; Exh. 10, Tr. at 106].  Plaintiff indicated she had sent an email to Lt. Gen. Brown regarding transportation of another affected worker, and that Col LaMar then told her "it is her problem and not yours, she [co-worker] can find her own ride – you will report to [Schofield] take leave or get out."  [*Id.*]  Elsewhere Plaintiff claims that in December 2004, Col. LaMar told her "you will report to Schofield Barracks the second floor or get out."  [*E.g.*, Plaintiff's Declaration of July 2, 2010, at 6].  She wrote a similar letter to the EEO at Fort Shafter on December 16, 2004. [Plaintiff's Exh. 15].

Rather than reporting to Schofield, or attempting to resolve matters further with Capt. Stilwell or the EEO officer, Plaintiff took extended annual leave and then retired in January 2005.  She contends in this suit that she is, or was disabled,

and that her requests for reasonable accommodations were not met, in violation of federal law.  She also contends that she was forced to retire, and the government retaliated against her because she requested accommodations and complained that her requests were not granted.

## II.  DISCUSSION

Plaintiff's complaint generally asserts claims alleging age and disability discrimination, and mentions a variety of federal statutes (some of which are not applicable, as set forth to follow).

In Count I, she asserts disability discrimination (failure to accommodate and retaliation) in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et al. ("ADA") and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794.

In Count II, she asserts illegal discrimination on the basis of age, citing (1) the Age Discrimination in Employment Act, 29 U.S.C. § 633a ("ADEA") (federal employees) and § 623(d) (anti-retaliation); (2) Title VII, 42 U.S.C. § 2000e-16(c) (federal employees); (3) Title VII, 42 U.S.C. § 2000e-3 (anti-retaliation) (4) the Americans with Disabilities Act, 42 U.S.C. § 12203(a) (anti-retaliation); and (5) the Equal Pay Act, 29 U.S.C. § 215(a) [sic. -- 29 U.S.C. § 206(d)].

Counts III and IV also allege violations of Title VII, mentioning age discrimination, and retaliation in violation of the Fourteen Amendment to the

United States Constitution.  Elsewhere, the complaint appears to invoke (1) the commerce clause to the United States Constitution; (2) 28 U.S.C. § 1331 (general federal question); (3) 28 U.S.C. § 1343(3) (jurisdictional provision for certain civil and equal rights statutes); and (4) 42 U.S.C. § 1981 [Complaint of July 22, 2009, at 7-9].

    A.  <u>Several of the Claims Fail as a Matter of Law.</u>

Sovereign immunity bars claims against federal agencies for damages brought under 42 U.S.C. § 1981.  *See Brown v. Gen. Serv. Admin.*, 425 U.S. 820, 827 n.8 (1976); *Middlebrooks v. Leavitt*, 525 F.3d 341, 349 (4th Cir. 2008) ("In addition to her Title VII claim, [Plaintiff] also asserts a discrimination claim under 42 U.S.C. § 1981. That statute does not, however, provide a remedy against federal officials.").

Likewise, to the extent claims were brought under sections 1331 and 1343(3), they also fail for the same reason.  Sovereign immunity bars most constitutional claims made directly against the United States (or an official-capacity defendant such as the Secretary of the Army), and sections 1331 and 1343(3) do not waive such immunity.  *See, e.g.*, *Trackwell v. United States*, 472 F.3d 1242, 1244 (10th Cir. 2007) (agreeing with reasoning that neither section 1331 nor section 1434(3) waives the United States' sovereign immunity).

9

And a claim based upon the commerce clause is obviously misplaced (and Plaintiff's counsel makes no argument that it provides a cause of action here).  *See, e.g.*, *Int'l Org. of Masters, Mates & Pilots v. Andrews*, 831 F.2d 843, 847 (9th Cir. 1987) ("The Commerce Clause creates no individual rights.").

Similarly, Plaintiff does not respond to the government's argument that the complaint makes no factual allegations implicating the Equal Pay Act, 29 U.S.C. § 206(d).  The complaint neither alleges facts, nor does the record contain any evidence, that Plaintiff was paid less than any comparable male employee.  Any claim based upon the Equal Pay Act fails.

The government also points out – and the argument is not disputed by Plaintiff in her opposition memorandum – that there are no factual allegations regarding potential claims under Title VII (illegal discrimination based upon race, color, religion, sex or national origin, or hostile environment).  Moreover, even if there were such a factual basis,[4/] such claims were not administratively exhausted

---

[4/] Even if the Court could address the merits of a hostile environment claim, it would fail.  The government notes that the only evidence of an incident that might be "hostile" would be an allegation that Col. LaMar yelled at Plaintiff and allegedly told her words to the effect of "report to Schofield Barracks, take leave, or get out."  [*E.g.*, Defendant's Exh. 13, Tr. at 15].  (Col. LaMar disputes the statement but admits he was upset that Plaintiff went around the military chain of command by sending an email to the Lt. General rather than attempting to resolve matters with her immediate superiors. [*E.g.*, Plaintiff's Exh. 9, Tr. at 75; Exh. 10,

<span style="float:right">(continued...)</span>

and would therefore be subject to dismissal.  *See, e.g.*, *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644-46 (9th Cir. 2004) (applying rule that a court lacks subject matter jurisdiction over a Title VII claim unless a plaintiff has exhausted administrative remedies with the EEOC and such jurisdiction extends only claims that fall within the scope of the EEOC's actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge).  Here, Plaintiff's EEO complaint alleged only age and disability discrimination. [Defendant's Exh. 1; Plaintiff's Exhs.16 and 17].[5/]  The Complaint fails to state a Title VII claim.

The government also points out that the United States is not an "employer" for purposes of the ADA.  *See* 42 U.S.C. § 12111(5)(B)(i) ("The term 'employer' [under the ADA] does not include . . . the United States[.]"); *Calero-Cerezo v. U.S. Dept. of Justice*, 355 F.3d 6, 11 n.1 (1st Cir. 2004) ("the ADA is not available to federal employees."); *Jordan v. Evans*, 404 F. Supp. 2d 28, 30 (D.D.C. 2005)

---

[4/](...continued)
Tr. at 106]).  This comment, assuming for summary judgment purposes that it was stated, does not constitute a "severe and pervasive" abusive environment sufficient to alter the conditions of her employment.  *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

[5/] Although portions of Plaintiff's Exh. 16 are illegible, the document clearly indicates (by circles around "age" and "handicap") that the basis of her EEO complaint was age and disability discrimination.

("The federal government is not subject to claims brought pursuant to the ADA because the ADA expressly states that the term "employer" does not include the United States") (citation and some internal quotation marks omitted).  The claims based on the ADA are dismissed.[6/]

The remaining claims are age discrimination (ADEA), and disability discrimination (Rehabilitation Act), which are analyzed under applicable summary judgment standards to follow.

B.  Summary Judgment in Favor of the Government is Appropriate as to the Age and Disability Discrimination Claims

### 1.  The ADEA claims fail.

Plaintiff appears to raise both disparate treatment and retaliation age-discrimination claims under 29 U.S.C. § 633a (federal employees) and § 623(d) (anti-retaliation).

For a disparate treatment age-discrimination claim, Plaintiff must first present a prima facie case by demonstrating (1) she belongs to a protected class; (2) she was performing according to her employer's legitimate expectations; (3)

---

[6/]  The disability discrimination claim for a federal employee is instead based upon the Rehabilitation Act, which applies the same standards as does the ADA. *See, e.g.*, *Jordan*, 404 F. Supp. 2d at 30 ("a federal employee is not without recourse.  Indeed, the Rehabilitation Act provides a remedy, in fact the exclusive remedy, for a federal employee's disability discrimination claim if the employee first exhausts her administrative remedies.") (citations omitted).

she suffered an adverse employment action, and (4) other employees with similar qualifications to her qualifications were treated more favorably.  *See, e.g.*, *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1220 (9th Cir. 1998) (providing a general statement of prima facie discrimination case); *Diaz v. Eagle Produce Ltd. Partnership*, 521 F.3d 1201, 1207 (9th Cir. 2008) (stating test in ADEA terms).

The first two parts are met:  Plaintiff belongs to a protected class (age 40 or above).  She was performing according to her employer's expectations.  [*See, e.g.*, Defendant's Exh. 10 ("you perform a critical staff function . . . Your presence with the rest of the Brigade staff at Schofield Barracks[] is essential[.]")].

The government argues that a transfer from Fort Shafter to Schofield Barracks is not, as a matter of law, a "significant change in employment status" so as to be a materially "adverse employment action" for purposes of a disparate treatment age discrimination claim.[7/]  *See, e.g.*, *Steiner v. Showboat Operating Company*, 25 F.3d 1459 (9th Cir. 1994); *Nidds v. Schindler Elevator Corp.*, 113

_____

[7/] Plaintiff appears to be making (or at least has attempted to allege) both a disparate treatment and retaliation-based age discrimination claim.  Retaliation-based discrimination claims apply a less-stringent test for "adverse action."  *See Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67-68 (2006) (indicating that "adverse action for purposes of a . . . retaliation claim requires a showing that 'a reasonable employee would have found the challenged action materially adverse,' meaning 'it might well have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'").

13

F.3d 912, 919 & n.3 (9th Cir. 1997).  The Court, however, considers this element to be a disputed question of fact.  Determining whether a transfer is materially adverse "depends upon the circumstances of the particular case, and 'should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances.''"  *Burlington Northern*, 548 U.S. at 71 (quoting *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998)).  From Plaintiff's perspective (or a reasonable person with her alleged medical conditions of arthritis and difficulty walking), a transfer to a location 20 miles away with (allegedly) a different stairway configuration might constitute a significant change in employment status, or might "dissuade a reasonable worker from making or supporting a charge of discrimination."

Nevertheless, an ADEA claim (whether based on disparate treatment or retaliation) fails for other reasons.  There is no evidence that other employees with similar qualifications to Plaintiff's were treated more favorably.[8/]  There is also no evidence that the Army transferred (or continued the transfer of) the entire headquarters unit from Fort Shafter to Schofield because of (or in retaliation for)

---

[8/] Plaintiff does attest that other personnel within the MP Brigade (some younger) were allowed to remain at Fort Shafter, but it was never established that they were similarly-situated or in the same S-1 unit that moved from Fort Shafter to Schofield Barracks.  [Plaintiff's Decl. of July 2, 2010, at 3].

Plaintiff's complaints about age discrimination.

Stated differently, even assuming Plaintiff could make out a prima facie case of age discrimination, the Army has proffered a legitimate and non-discriminatory reason for transferring Plaintiff.  The entire MP unit (or at least the headquarters or S-1 unit) was transferring to Schofield Barracks.  And thus Plaintiff would have the burden of demonstrating pretext.  *See, e.g.*, *Diaz*, 521 F.3d at 1207.  Plaintiff has no evidence of pretext.[9/]  Indeed, Plaintiff admitted during administrative proceedings that she had no age-discrimination claim or evidence.  She was asked "how did your age prevent you from relocating to Schofield?"  Her answer was "It has nothing to do with my age.  Basically, I just threw that in."  [Defendant's Exh. 5, Tr. of July, 21, 2005, at 42].  The Court agrees that, based on the evidence in the record, this case has nothing to do with age.  The claims based upon the ADEA fails as a matter of law.

### 2.  The Rehabilitation Act (Failure to Accommodate) Claims Fail.

Although the ADA itself does not apply to federal workers, the Court applies ADA standards in evaluating Plaintiff's claim for violation of the Rehabilitation

---

[9/] It makes no difference whether or not the transfer was for Col. LaMar's convenience (as Plaintiff appears to argue at times), and whether or not the MP unit later moved to a different newer building at Schofield.  There is no evidence that the transfer was moved up because of, or in retaliation for, Plaintiff's complaints.

Act.  *See, e.g.*, *Coons v. Secretary of the Treasury*, 383 F.3d 879, 884 (9th Cir. 2004) ("The standards used to determine whether an act of discrimination violated the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act") (citations omitted).

a.  Plaintiff is not "disabled" for purposed of the Rehabilitation Act.

The government argues that Plaintiff is not "disabled" as that term is defined under the Rehabilitation Act and ADA.  Under the ADA, "an individual is disabled if that individual (1) has a physical or mental impairment that substantially limits one or more of the individual's major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment."  *Id.* (citing prior 42 U.S.C. § 12102(2)) (other citations omitted).

There is evidence of Plaintiff's medical concerns (arthritis, alleged difficulty walking, and anxiety [*e.g.*, Plaintiff's  Exhs. 1-3]).  The Court presumes Plaintiff has a valid "physical or mental impairment" that could affect her life and work activities.  The government, however, argues that there is no evidence that such impairments "substantially limit" one or more of Plaintiff's "major life activities."

> A major life activity is a function "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."  29 C.F.R. § 1630.2(i).

*Coons*, 383 F.3d at 885.

16

> To be substantially limited in any of these activities, a person must be unable to perform the major life activity or be "significantly restricted as to condition, manner or duration under which [he] can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform that same major life activity."  29 C.F.R. § 1630.2(j) .

*Id.* (citations omitted).[10]

The government argues that climbing stairs is not a "major life activity." The Court agrees.  *See, e.g.*, *Weber v. Strippit, Inc.*, 186 F.3d 907, 914 (8th Cir. 1999) ("walking long distances or climbing stairs without getting fatigued [are] moderate limitations on major life activities [that] do not suffice to constitute a 'disability' under the ADA"); *Penny v. United Parcel Serv.*, 128 F.3d 408, 414-15 (6th Cir. 1997) (walking or stair climbing even with "moderate difficulty or pain" does not rise to the level of a disability) (collecting cases); *Robinson v. Global Marine Drilling Co.*, 101 F.3d 35, 38 (5th Cir. 1996) (climbing that aggravated plaintiff's asbestosis did not qualify as major life activity); *Kelly v. Drexel Univ.*, 94 F.3d 102, 107 (3d Cir. 1996) (plaintiff with "visible and apparent" limp who

---

[10] Plaintiff argues that cases prior to 2008 are inapplicable because 2008 amendments to the ADA codified congressional intent to loosen restrictions on the definition of "disabled" and indicated that case law interpretations of the term "substantially limits" were "inappropriately high."  *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (effective Jan. 1, 2009) ("ADAAA"). As the government notes, however, the ADAAA is not retroactive. *See, e.g.*, *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009). To the extent the ADAAA would help Plaintiff here, it does not apply.

had difficulties climbing stairs was not substantially limited in a major life activity) (collecting cases).  There also is no medical evidence that Plaintiff could not climb the stairs to the second floor at building 3004 at Schofield (which had one less stair – although apparently of a different configuration – as the second floor of the building at Fort Shafter where she had worked on the second floor for the most-recent seven years [Plaintiff's Exhs. 7 & 8; Decl. of Plaintiff of June 1, 2010, at 8]).

Plaintiff contends her impairments limited her ability to walk, which *is* a major life activity.  *See* 29 C.F.R. § 1630.2(i).  And there is at least some evidence that Plaintiff, in her recent years, had difficulty walking.  [*See, e.g.*, Decl. of Plaintiff of June 1, 2010, at 4; Plaintiff's Exh. 3 (letter from Dr. Hong stating "[s]he does have difficulty walking extended distances")].  However, case law indicates that such general allegations of difficulty walking are insufficient to establish a "significant" limitation on that major life activity.  *See, e.g.*, *Kim v. Potter*, 460 F. Supp. 2d 1194, 1200 (D. Haw. 2006)*; Penny*, 128 F.3d at 414-15.  In any event, to the extent Plaintiff's claim is based on an inability or difficulty walking a long distance from a parking space to her proposed office at Schofield, she admits that her arrangement for a van pool had mooted such a problem.  [*See* Defendant's Exh. 2, Tr. at 48-49].

18

Nor is there evidence that Plaintiff had a "record of" an impairment that substantially limits a major life activity, for purposes of the applicable definition of "disability." A "record of such an impairment" means the individual "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). There is no evidence that Plaintiff had any prior hospitalization or prolonged period of impairment that "substantially limited" her working or walking. *See, e.g.*, *Kim*, 460 F. Supp. 2d at 1202 (citing cases).

There is evidence that might indicate Plaintiff was "regarded" as disabled.[11]

---

[11] For purposes of this action, the term "regarded as having such an impairment" means:

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) Has none of the impairments defined in paragraph (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). In contrast, the current statute (applicable to situations after January 2009) defines the term as follows:

(continued...)

19

For example, she apparently had a handicapped access parking space, [Plaintiff's

Exh. 12], and parking placard, [Plaintiff's Exh. 5].  She attested that a ramp had

been built for her at Fort Shafter.  [Plaintiff's Decl. of July 2, 2010, at 6].

However, here it would make no difference even if she could establish that she was

"regarded as having" a substantially-limiting impairment for purposes of the prior

42 U.S.C. § 12102(2) (now 42 U.S.C. § 12102(1)(C)).  This is because there is no

duty for a covered entity to accommodate a person who is only "regarded as"

disabled (as opposed to a person who is actually "disabled" under the ADA).  *See*

*Kaplan v. City of North Las Vegas*, 323 F.3d 1226, 1232-33 (9th Cir. 2003)

(agreeing with some other Circuits that an employer is not required to

accommodate employees who are only "regarded as" disabled); *see also*, *e.g.*,

---

[11]/(...continued)
For purposes of paragraph (1)(C) [42 U.S.C. § 12102(1)(C)]:

(A) An individual meets the requirement of "being regarded as having
such an impairment" if the individual establishes that he or she has
been subjected to an action prohibited under this chapter because of an
actual or perceived physical or mental impairment whether or not the
impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory
and minor. A transitory impairment is an impairment with an actual or
expected duration of 6 months or less.

42 U.S.C. § 12102(3).

*Weber v. Strippit, Inc.*, 186 F.3d 907, 917 (8th Cir. 1999).

As for a retaliation claim under the ADA/Rehabilitation Act – assuming for summary judgment purposes that Plaintiff could prove that her letter to the commanding general was protected activity and that a transfer from Fort Shafter to Schofield Barracks was a materially adverse action – the claim would otherwise fail for lack of causation.  Plaintiff's claim appears to be that the Army decided to transfer (or continue with transferring) its entire MP headquarters unit (or at least the S-1 unit) to Schofield in retaliation for Duffy's complaints above the chain of command.  She argues that there was no need for the transfer of the unit, and that she could have worked at Fort Shafter even though the rest of her unit was moved to Schofield.  Her retaliation theory is fanciful.  The evidence is that the decision to move the unit had already been made months earlier (i.e., it could not have been made in retaliation).  It is irrelevant that the unit later moved into a different building or buildings at Schofield.  There is no evidence that the Army hurriedly moved the unit to Schofield so as to make Plaintiff retire or in retaliation for anything she said or did.

      b.  Plaintiff breached a duty to engage in an interactive process to consider requested accommodations.

Perhaps more importantly, even if there were questions of fact as to whether Plaintiff was "disabled," her failure-to-accommodate claim fails because she failed

to complete participation in the necessary "interactive process" (and the breakdown in the process is not attributed to the government).  *See, e.g.*, *Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2003) (reiterating that both an employer and an employee have a duty to engage in an interactive process to consider requested accommodations that requires "communication and good-faith exploration of possible accommodations"); *Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) ("'Liability for failure to provide reasonable accommodations ensues only where the employer bears responsibility for the breakdown' in the interactive process.") (quoting *Beck v. Univ. of Wis. Bd. of Regents*, 75 F.3d 1130, 1137 (7th Cir. 1996)).

The record indicates that, after Plaintiff made her complaints known, she was contacted by and corresponded with the Equal Employment Opportunity Complaints Manager, Kenrock Higa.  Higa last contacted Plaintiff by email on December 9, 2004, where he told Plaintiff "I'm sure we can work this through a reasonable resolution.  I'll be in training Monday through Wednesday [of] next week. . . . I'll do my best to look into your concerns, so let[']s plan on getting together later part of next week OK."  [Plaintiff's Exh. 13].  However, instead of working with Higa, Plaintiff wrote the letter of December 14, 2004 to Lt. General John Brown (the Commander of the United States Army Pacific Command),

stating "My disability. . . was not considered in this move [from Fort Shafter to Schofield Barracks]." [Plaintiff's Exh. 14].

Plaintiff also admits that her immediate supervisor, Capt. Stilwell, offered to work with her on her request to be relocated to the first floor of the building at Schofield. The following exchange occurred during administrative proceedings:

Judge Leach:      Captain [Stilwell], when you asked him about being able to remain on the first floor once you moved to Schofield Barracks, did he give you an answer, a reason or did he respond at all to your request?

Plaintiff:        "We'll see what we can do."

Judge Leach:      He said, "We'll see what we can do." [?]

Plaintiff:        Hmm-hmm.

Judge Leach:      What did you say?

Plaintiff:        "Okay."

[Defendant's Exh. 1, Tr. at 61].

And the record also establishes that, after Plaintiff provided notes from doctors indicating she had health concerns, the government requested further information from Plaintiff's doctors. In November or December 2004, Captain Stilwell wrote to Plaintiff:

2. The documentation submitted by your physicians suggest that you may have a medical condition requiring a workplace accommodation. I cannot approve of or provide a workplace accomodation (sic)

23

without specific medical documentation to assist me in determining if you meet the requirements of the Americans Disability Act (ADA). The medical information requested of your physician by the enclosed letter and its attachments will assist me in determining whether your condition is covered by the ADA and, if so, will help me identify an effective accommodation.

3.  In order to complete this process, please sign the enclosed release form so that I may be authorized to review the medical information sent by your physicians.

4.  Please have your physicians complete the enclosed form and return it to me by 16 Dec 2004.

[Defendant's Exh. 9].

Plaintiff did not return the forms; she indicated she did not want to do so

because the physicians would be insulted:

Q.  [Investigator]  Can you explain to me why those forms were never completed?

A.  [Plaintiff] . . . They had handed me one of the questionnaires, and when I went over it with CPT Stilwell I said this is an insult to the physician. They're asking where he works.

Q.  So you objected to the content of the forms?

A.  Just to the questionnaire for the doctors. . . .

[Defendant's Exh. 5, Tr. at 46].  Similarly, Col. LaMar testified:

Q.  [Cpt. Meek]:  . . . So you've received these [complaint] letters.  Did you consult with anyone at that time?  What did you do next?

A.  [Col. LaMar]:  After we received those letters we sat down with [Civilian Personnel Office lawyers] and we went ahead and kind of, you know, talked

about what, what should we do.

   That's where Mr. Nakama, I think, recommended that we go ahead and do this letter asking for her to have her doctors fill out these questionnaires to determine, you know, the extent of her disability, to see if we did need to make accommodations for her workplace up at Schofield.

. . . .

Q.  Did you ever receive any response to those questionnaires?

A.  I did not receive any response to the questionnaires, nor did we receive any – Captain [Stilwell] did inform me that Ms. Duffy said that she refused to give those questionnaires to her doctors as she thought it would be demeaning for them to go ahead and fill out.

[Plaintiff's Exh. 10, Tr. at 101-103].

   The Court concludes that Plaintiff failed to participate in good faith in the interactive process.  Perhaps Plaintiff thought further participation would have been futile, but the record establishes that the government was attempting to explore accommodations in good faith and that a breakdown in the process was not the fault of the government.  Accordingly, under established disability principles, the government is entitled to summary judgment.  *See, e.g.*, *Allen v. Pacific Bell*, 348 F.3d 1113, 1114-15 (9th Cir. 2003) (reasoning that an employer's obligation to consider a particular accommodation under the interactive process ends if medical validation is reasonably requested but the employee refuses to cooperate).

## III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss and for Summary

Judgment [15] is GRANTED.  Judgment shall issue in favor of Defendant.

IT IS SO ORDERED.

DATED:  July 22,2010.



_____
Samuel P. King
Senior United States District Judge

*Duffy v. McHugh*, Civ. No. 09-00337 SPK-BMK, Order Granting Defendant's Motion to Dismiss and for Summary Judgment